## BURGAN v. SMITH ET AL.

1. **Conveyance:** FRAUD: TAX SALE: DAMAGES. B., having entered certain government lands, subsequently conveyed them by deeds of general warranty, which were not filed for record; the plaintiff afterwards purchased the lands at tax sale; S. procured a quit-claim deed from B. to the property. which he filed for record, knowing at the time that B. had no interest therein and falsely representing that he had a tax-title by which he would be enabled to hold it; he then procured from the plaintiff an assignment of the tax certificate, representing that he was entitled to redeem and paying the amount required for redemption; he subsequently conveyed the land to innocent purchasers: *Held,*

    1. That the tax certificate was obtained from plaintiff by fraud, and that S. became the holder thereof in trust for plaintiff.

    2. That plaintiff was entitled to recover from S. the actual value of the property, less the amount paid by the latter for the assignment of the certificate.

*Appeal from Adams Circuit Court.*

THURSDAY, DECEMBER 6.

In the year 1855 Walter C. Brock of Ohio entered 280 acres of land in Adams county, this State. In 1859 Brock sold said land to one Moore. Before a conveyance was made, Moore resold 200 acres of the land to James McMillen. On the 1st day of February, 1859, Brock, by deeds of general warranty, conveyed the 200 acres to McMillen and the remaining 80 acres to Moore. Moore and McMillen afterwards conveyed the lands to other parties. None of said conveyances

were filed for record in the recorder's office of Adams county until the 28th day of October, 1872.

On the 3d day of February, 1868, the plaintiff purchased all of said lands at tax sale for the delinquent taxes for the several years from 1858 to 1866, inclusive. The amount paid at the tax sale was nearly one dollar and twenty-five cents per acre. Subsequently the plaintiff, as tax sale purchaser, paid the taxes for the years 1867, 1868 and 1869.

On the 3d day of May, 1870, Walter C. Brock conveyed all of said land by quit-claim deed to the defendant, D. N. Smith, for an expressed consideration of $1,000. This conveyance was filed for record May 10, 1870. On the 3d day of January, 1871, plaintiff assigned his tax sale certificate to the defendant, D. N. Smith, and received in payment therefor the sum of $621; that being the full amount which would be necessary to pay to redeem the lands at the expiration of three years from the tax sale.

On the 17th day of February, 1871, the treasurer of Adams county made a tax deed for said lands to the defendant, Smith. After the conveyance by Brock to Smith, and before the assignment of the tax sale certificate by plaintiff to him, Smith entered into the actual possession of a part of said land and surveyed and platted it as an addition to the town of Corning.

In the month of November, 1871, Smith conveyed all of said lands by deed of general warranty to the defendant, George W. Frank. Afterwards Frank conveyed to other parties, who are made defendants herein.

This action was commenced in 1873. Plaintiff claims that the assignment of the tax sale certificates from him to Smith was procured by fraud. It is averred in the petition that Smith, knowing that the title to the land appeared by the record to be in Brock, and that plaintiff's tax purchase would in a very short time ripen into a title, went to the residence of Brock in Ohio, and procured a quit-claim from Brock, and placed it upon record, for the purpose of causing plaintiff to believe that he (Smith) had the right to redeem from the tax sale, and thus induce plaintiff to assign the certificates of purchase; that at the time, and before the quit-claim deed was

executed, said Smith knew that Brock had no interest in or claim upon the land; that said deed was fraudulent and void and conveyed no title and no right to redeem the land; that said Smith, through his agent, Frank, represented to plaintiff that he (Smith) was the owner of the land by virtue of said quit-claim deed, and would redeem the same if plaintiff would not assign the tax sale certificates to him; that plaintiff examined the record of said quit-claim deed, and all other records, and relying upon the representations of said Smith as to his right to redeem from said tax sale, was induced thereby to assign said certificates to said Smith in the belief that said Smith was the owner, and without any knowledge that said Brock had sold and conveyed said land to Moore and McMillen in 1859.

It is also claimed that the other defendants, who are subsequent purchasers from Smith, took their conveyances without consideration and with full notice of said frauds and false representations.

The prayer of the petition is that plaintiff may have a decree against all of the defendants, quieting the title to the land in him, or, if it be found that the subsequent purchasers acquired title without notice of fraud, then that he may have a decree against the defendant, Smith, for the full value of the land. The answer of Smith denies all fraud in procuring the assignment of the tax sale certificates. The answers of the other defendants deny all knowledge of the alleged frauds, and aver that their respective conveyances were taken in good faith and for valuable considerations. There was a decree finding the equities of the cause with the defendants, and dismissing the plaintiff's petition at his costs. Plaintiff appeals.

*Frank M. Davis*, for appellant.

*Stuart Bros. & Mitchell*, for appellees.

Rothrock, J.—I. The evidence shows beyond question that, when the defendant, Smith, induced Walter C. Brock and his

1. CONVEYANCE: fraud: tax sale: damages.

wife to quit-claim the land to him upon the payment of $1,000, he knew that long before that they had conveyed all of the land by general

warranty deeds to McMillen and Moore. He falsely represented to Brock and his wife that he had a tax title on the land by which he could hold it, and that it had cost him six or seven hundred dollars.

Mrs. Amy Brock testified that "Smith said he had the place, and expected to keep it, and could do it without any further trouble, or troubling any body about it, and as he did not feel clear in doing that, and as it was worth something to him and he had been to the land office and found the land in Walter Brock's name and no other, that he would give one thousand dollars for a quit-claim deed; that he could hold it just as easy without that as with it, *only for conscience' sake*."

That Smith knew the quit-claim deed conferred no title upon him there can be no doubt. That he took it and placed it upon record for the purpose of using it as a means of acquiring plaintiff's tax sale certificates, subsequent events conclusively show. It is not pretended, and cannot be, that the titles now held by the subsequent purchasers are in any manner aided, or made more secure, by the quit-claim deed from Brock to Smith. It served its full object and purpose when Smith procured the assignment of the tax sale certificates. All the title any of the parties now have to the land is based upon the tax deed.

The evidence shows that the plaintiff intended to hold the tax sale certificates, and at the expiration of three years take his treasurer's deed, unless the land should before that be redeemed by some one entitled to redeem. The agent of Smith, after the quit-claim deed was placed upon record, sought out the plaintiff and applied to him to purchase the tax sale certificates for Smith, representing Smith to be the owner and entitled to redeem. After an examination of the records, and being advised by an attorney that Smith had the right to redeem, and without any knowledge that Brock had conveyed the land to any one before making the quit-claim to Smith, as a favor to Smith and his agent, Frank, the plaintiff assigned the tax sale certificates to Smith.

That these acts of Smith were a fraud upon plaintiff we have no doubt. Putting a deed upon record which was valid

upon its face, but in fact fraudulent and void, and using that as an assertion of title with which to deceive the plaintiff, was in substance the same as declaring to the plaintiff that he had the title as it appeared of record. The fact that the deed was in form a quit-claim does not palliate the fraud. The defendant attempted to, and did, make up a record of title which showed upon its face that he was entitled to redeem. He cannot now claim that plaintiff should have suspected that a fraud was being practiced upon him, and should have ascertained that Brock had conveyed the land to Moore and McMillen.

It is urged that Smith believed he had the right to redeem. We are not inclined to think, with his acknowledged experience in dealing in real estate, and the other established facts in this case, that he entertained any such belief.

II. The evidence does not establish the fact that Frank had knowledge of the fraudulent character of the quit-claim deed when he took his conveyance from Smith. It is true there were intimate business relations between them, but there is no evidence to justify a finding that Frank was a party to, or had knowledge of, the fraudulent character of the quit-claim deed. The same may be said of the other defendants; there is nothing to show but that each of them took his conveyance in good faith, and for a valuable consideration.

III. The only remaining question is, what are the rights of the plaintiff as against the defendant Smith. He cannot recover the land, for that has been conveyed to innocent purchasers.

It is insisted in behalf of the appellee that the tax sale certificates were mere chattels, and if plaintiff was fraudulently induced to sell the same, his only remedy would be an action against Smith for damages. It is true that a sale of land for taxes does not divert the title of the owner. But if the land be not redeemed the sale will ripen into a title without any other act of the purchaser than presenting the tax sale certificates to the treasurer for a deed. The tax sale purchaser has an inchoate right to the lands which can only be defeated by a redemption from the sale. There never were any taxes paid upon this land excepting what was paid by the plaintiff at the

tax sale, and for the years subsequent to the sale. The period of redemption expired in one month after the defendant, by fraud, procured the assignment of the tax sale certificates. Smith and his grantees claim their title solely through the treasurer's deed, and for aught that appears said title is perfect and complete. Sometime after acquiring the tax title Smith sold the land to Frank for $7000. Under these circumstances we think Smith should be regarded in equity as holding the tax sale certificates in trust for the plaintiff. He cannot by fraud procure the certificates and take the deed, and then claim that the certificates were worth only the amount paid by him for them. The plaintiff is entitled to recover the value of the land at the time Smith took the title under the treasurers deed, less the sum of $621 paid for the assignment of the tax sale certificates. We find from the evidence that the land was worth $4600. The plaintiff may take a judgment in this court for $3979 and costs against the defendant, D. N. Smith, or the cause will be remanded to the court below for that purpose.

REVERSED.